[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for dissolution of marriage returnable to the Waterbury Superior Court. The plaintiff and defendant, whose maiden name was Maria Jose Dias, and the plaintiff were married at Porto City, Portugal on July 6, 1975. The parties have both resided in Connecticut for at least twelve months since the commencement of this action.
There is one minor child issue of the marriage, Nancy Pinto, born November 4, 1983.
The court has the requisite jurisdiction to proceed to judgment in this matter.
In arriving at the findings and orders which follow, the court has taken into consideration the evidence and testimony offered at the trial which lasted several days. The court has also taken into consideration the provisions of Sections 46b-81,46b-82 and 46b-84 of the General Statutes as well as other relevant statutes.
The court finds that the allegation that the marriage has broken down irretrievably has been proven and the court hereby decrees that the marriage is dissolved on that ground.
At the time of the trial the plaintiff-husband was 46 years old and in generally good health. He was born in Portugal and attended school through the twelfth grade. In April 1976 the plaintiff and defendant moved to this country and resided in Waterbury with the defendant's parents. The plaintiff was employed in several factory jobs and also attended classes and obtained his G.E.D.
The plaintiff eventually started his own business, Pinto's Driving School. Its principal location was in Waterbury but a branch was located in Danbury. The driver's education program enrolled primarily teenagers and adult members of the Portugese CT Page 13568 community. According to the plaintiff, the business did reasonably well until approximately 1997 when its enrollment dropped to approximately 500 total students (down from 750 students in 1995-96). He testified that students paid an average of $225.00 in 1995 and adults paid between $100.00 and $150.00. The plaintiff blamed new state regulations and growing competition from other schools for a decline in both enrollment and profits. He also specifically blamed the defendant for ruining his business by causing his arrest for domestic violence. In his opinion, his reputation in the Portugese community was damaged by the arrest and people stopped coming to his school.
Despite his extensive offers of proof at trial, the court did not find that the defendant's conduct either directly or indirectly was designed to embarrass or hurt the plaintiff either personally or professionally. There was insufficient proof that his arrest hurt his business.
The arrest arose out of an incident where the defendant, who had exclusive use of the marital residence, entered it after work one afternoon and found a skeleton party decoration displayed prominently on the floor of the family room and surrounded by pennies. While the testimony was unrefuted that such a display conveyed no ethnic or cultural threat, it was the basis of the defendant's complaint to the police that she had been "threatened" by her husband. Probable cause for the defendant's arrest was found and he was arrested. The case was then dismissed by the court.
At the time of trial the defendant-wife was 46 years old and in reasonably good health. She had been treated for depression which she attributed to the tension in the marriage.
She also was born in Portugal and came to this country with the plaintiff to establish a permanent home and to start a family. She and the plaintiff had two daughters, Nancy and an older sister, Diane, who has reached the age of majority and is not within the jurisdiction of this judgment.
The defendant was the primary care-giver for both children and also maintained employment at several small manufacturing companies, the current one being The Risdon Company in Thomaston.
Her financial affidavit indicates that her average weekly income at the time of trial was $332.80 which netted her $241.20 CT Page 13569 per week. In addition to that income, she received nominal amounts of income occasionally by selling items for a catalogue club.
Much testimony was offered concerning the use or in some instances the invasion of the parties' joint bank accounts by both parties — most notably in the last several years of the marriage. The more competent evidence indicates that most if not all of the withdrawals from those accounts by the defendant were for legitimate debts and obligations of the parties. The plaintiff's withdrawals were for his own use including for his personal travel to Portugal and Florida and for his counsel fees. At least one withdrawal — $15,000.00 from a CD on February 6, 1997 — was in violation of a pendente lite order against depletion of marital assets (Ex. 18).
The plaintiff also failed to comply with pendente lite orders concerning disclosure of his assets, production of his business records and his child support obligation. The plaintiff had been ordered to pay child support in the amount of $139.38 in November 1996 and he consistently failed to do so. The fact that the minor child resided with him during that time may have formed a ground for modification of that order, but no modification was granted and the obligation continued unpaid. The plaintiff also failed to comply with his pendente lite alimony obligation of $145.00 per week also entered in November 1996.
In ancillary proceedings, the court found the plaintiff to be in contempt of a November 1996 restraining order concerning martial assets when he was found to have sold an a 1991 Toyota Corolla automobile which he had described as essential for use in the driving school. It was sold on a Sunday afternoon in a bar in Danbury shortly after the defendant had his older daughter arrested for having it in her possession without his permission.
Perhaps the most extensive and time consuming subject of testimony throughout the trial involved the plaintiff's business and the income it generated. While he insisted that it was not a particularly profitable business, he failed at almost every juncture, both prior to and during trial to present credible and authenticated records that would substantiate his claim. In fact, the evidence to the contrary was the impressive accumulation of assets including joint bank accounts totaling over $90,000.00 in banks in Waterbury, Naugatuck and in Portugal. The fact that the parties paid off the mortgage on the marital CT Page 13570 residence (an estimated $50,000.00), and expended substantial sums for travel, for private school tuition and to meet all of their living expenses indicates that a substantial amount of money came into the marriage during the last few years — and it wasn't due, in any appreciable degree, to the $241.00 per week the defendant was netting from her factory job.
The plaintiff indicated on his financial affidavit that he paid himself $500.00 per week which netted him $405.00 weekly. He further testified that he paid a part time secretary $250.00 per week, and one driving instructor (the defendant's cousin) $600.00, on occasion, and another driving instructor (his nephew) at least $400.00 per week. That testimony, couple with his continued lack of compliance regarding tax and income records and considered in light of the large sums of money mentioned above make the plaintiff's testimony less than credible. The court finds it difficult to believe that the defendant would pay himself the same if not less than his employees.
The plaintiff's testimony about the co-mingling of his sister's money in his bank account as an accommodation to her as an Portugese citizen was also not believed by the court.
The court heard claims by the plaintiff that the sum of $10,000.00 was wrongfully withdrawn by the father of the defendant from an account in the parties' names in Portugal. The defendant offered testimony that the $10,000.00 was used for the older daughter's wedding. The court leaves the plaintiff to any recourse he may have against the defendant's father for such misappropriation.
In regard to the reasons for the breakdown of the marriage, the court heard evidence from the defendant that the plaintiff was involved with his secretary and that one one occasion she witnessed the fact that he spent the entire night in her condominium. His testimony that intimate apparel and other gifts were purchased for his minor daughter was not believable. Neither is the plaintiff's sworn testimony that a trip to Florida was with gentlemen friends whose names he could not recall. While the court does not find that the evidence establishes adultery, it does contribute to the court's finding that the breakdown of the marriage is primarily due to the conduct of the plaintiff.
 ORDERS
CT Page 13571
I. DISSOLUTION OF MARRIAGE
Having found that the marriage of the parties has broken down irretrievably, the court hereby decrees that the marriage is dissolved and the parties are single and unmarried.
II. CUSTODY AND VISITATION
Pursuant to the stipulation of the parties and upon a further finding that it is in the best interest of the minor child, the court orders that the parties are to have joint legal custody of the minor child, Nancy. The child's primary physical residence shall be with the plaintiff, her father. The defendant, her mother, shall have reasonable visitation with her. If the parties cannot agree upon reasonable visitation the matter shall be referred to the Family Services office of the Waterbury Superior Court for mediation.
III. CHILD SUPPORT
The defendant shall pay to the plaintiff child support in the amount of $60.00 per week based upon her proportionate share of the parties' reported combined net weekly income ($646.00).
The defendant shall maintain medical insurance for the benefit of the minor child through her employment. If such medical insurance is not available, the parties shall share equally the cost of the premiums for such medical insurance. The parties shall also share equally any uninsured or unreimbursed necessary medical and dental expenses — excluding orthodontia expenses — incurred for the benefit of said minor child.
IV. ALIMONY
The plaintiff shall pay to the defendant periodic alimony in the amount of $175.00 per week. Said obligation shall continue until the earliest of the following events:
1. The death of either party.
2. The remarriage of the defendant.
3. Cohabitation by the defendant as that term is defined by statute. CT Page 13572
4. November 30, 2008.
V. BY WAY OF PROPERTY DISTRIBUTION
 A. REAL PROPERTY
The plaintiff shall quit claim to the defendant all of his right, title and interest in and to the marital residence located at 64 Tedesco Drive, Waterbury. The defendant shall be solely responsible for all costs associated with said property, except for real estate taxes and shall indemnify and hold the plaintiff harmless from all such obligations.
The plaintiff, however, shall retain an equitable interest in said real property in the form of a mortgage back to him by the defendant in the amount of $40,000.00, which the court finds to be forty (40%) per cent of the current value of said residence ($100,000.00). That obligation shall become due and payable to the plaintiff upon the earliest of the following events:
1. The death of the defendant.
2. The sale of the said real property by the defendant.
3. November 30, 2003.
The defendant shall maintain homeowner's insurance on said property in an amount not less than $100,000.00 until the payment to the plaintiff of his equitable interest in said property.
The plaintiff shall pay to the defendant one (1/2) half of the City of Waterbury annual real estate taxes until he receives payment of his equitable interest in the property.
B. PERSONAL PROPERTY
1. Automobiles
The plaintiff shall convey title to the 1987 Acura Legend to the defendant. The defendant, if possible, shall transfer to the plaintiff the motor vehicle registration and registration plates "DRAGAO", which is currently assigned to said 1987 Acura to the plaintiff. Any cost of such transfer shall be the responsibility of the plaintiff. CT Page 13573
The plaintiff shall retain his right, title and interest in and to the 1990 Pontiac Grand Am, the Geo Prizm and the 1989 Toyota Camry.
2. Pinto Driving School
The plaintiff shall maintain all right, title and interest in and to the business known as Pinto's Driving School, its trade name, customer lists and tangible assets. He will also be solely responsible for all debts and obligations of said business.
3. Bank Accounts
The plaintiff shall pay to the defendant the sum of $25,000.00 within 180 days from the date of this judgment. Said sum is in lieu of all other claims the defendant may have or have had in and to the parties joint bank accounts prior to the commencement of this action.
Each of the parties shall retain the bank accounts reported on their respective financial affidavits.
4. Household contents
The parties shall retain their respective personal property situated in the marital residence. Personal property of the minor child Nancy, including her furniture, bicycle stereo and CD player, jewelry and personal effects shall be returned to her. The remaining personalty shall be divided equally between the parties. If they cannot agree upon such division of property the matter shall be referred to the Family Services office for mediation.
VI. MISCELLANEOUS ORDERS
1. Medical Insurance — the defendant shall cooperate with any request by the plaintiff to obtain medical insurance through her employer under COBRA. The plaintiff shall be responsible for any cost associated with such insurance.
2. Debts — Each party shall be solely responsible for the debts appearing on their respective financial affidavits and they shall indemnify and hold the other harmless from any claims arising from such debts. CT Page 13574
3. Income Taxes — The parties shall file joint federal and state tax returns for the year 1996 and shall apply any tax refunds to the outstanding real estate taxes on the marital residence. The plaintiff shall be solely responsible for any remaining real estate taxes currently owed to the City of Waterbury and he shall indemnify and hold the defendant harmless from such debt.
4. Counsel fees — The plaintiff shall pay to the defendant the sum of $8,500.00 as contribution toward her counsel fees within 120 days from the date of this judgment.
By the Court
Joseph W. Doherty, Judge